IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DARRELL J.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:21-cv-00325 |
| | ) |
| KILOLO KIJAKAZI[2] | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Darrell J. ("Darrell") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Darrell argues that the Administrative Law Judge ("ALJ") erred by failing to properly (1) determine his physical residual functional capacity ("RFC") using a function-by-function analysis, and (2) assess his allegations regarding his symptoms. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 16) and **DENYING** Darrell's Motion for Summary Judgment (Dkt. 14).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

the Commissioner's conclusion that Darrell failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Darrell filed for SSI on April 24, 2019, alleging his disability began on November 1, 2018, due to restless leg syndrome, high blood pressure, nerve root disorder, degenerative disc disease, type-II diabetes, anxiety, bipolar disorder, and sleep apnea. R. 15, 224, 315. The state agency denied Darrell's application at the initial and reconsideration levels of administrative review. R. 96–106, 107–15. The relevant period for Darrell's SSI claim is from his April 24, 2019, application date through the ALJ's decision on October 9, 2020. See 20 C.F.R. § 416.202 (explaining that a claimant is not eligible for SSI until, among other factors, the date he files an

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

application for SSI benefits); 20 C.F.R. § 416.501 (stating that a claimant may not be paid SSI for any period that precedes the first month he satisfies the eligibility requirements, which cannot pre-date the date on which an application was filed). On September 23, 2020, ALJ Mark Dennard held a hearing to consider Darrell's claim. R. 35–55. Counsel represented Darrell at the hearing, which included testimony from vocational expert Gerald Wells. On October 9, 2020, the ALJ entered his decision analyzing Darrell's claim under the familiar five-step process[4] and denying his claim for SSI benefits. R. 15–30.

The ALJ found that Darrell had not engaged in substantial gainful activity since April 24, 2019, the application date. R. 17. The ALJ determined that Darrell suffered from the severe physical impairments of degenerative disc disease of the lumbar spine, diabetes mellitus, hypertension, obstructive sleep apnea, gout, obesity, and dysfunction of the major joints, right shoulder. Id. The ALJ found that Darrell did not have any severe mental impairments. Id. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 21–23.

The ALJ concluded that Darrell retained the RFC to perform light work, except that he is capable of lifting/carrying twenty pounds occasionally and ten pounds frequently; sitting, standing, and walking for six hours each in an eight-hour workday; pushing/pulling as much as he can lift/carry; and can climb ramps and stairs, balance, stoop, kneel, crouch, and crawl

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the Claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

occasionally. Darrell should never climb ladders, ropes, or scaffolds and can occasionally work at unprotected heights. R. 23.

The ALJ found that Darrell was unable to perform any past relevant work, however, Darrell could perform other jobs that exist in significant numbers in the national economy, such as cashier, deli cutter, and cafeteria attendant. R. 28–29. Thus, the ALJ determined that Darrell was not disabled. R. 29. Darrell appealed the ALJ's decision, and the Appeals Council denied his request for review on April 13, 2021. R. 1–4.

## ANALYSIS

Darrell alleges that the ALJ failed to properly (1) determine his physical residual functional capacity ("RFC") using a function-by-function analysis and (2) assess his subjective allegations regarding his symptoms.

### A. Medical History

1. Treatment History

Darrell sought treatment for his gout symptoms of ankle tenderness and mild edema in the right lower extremity in July 2018. See R. 344–49. In December 2018, Darrell went to the emergency room due to right shoulder pain. R. 334, 651. Darrell's right shoulder X-rays showed no evidence of fracture, dislocation, or other bone or joint space abnormality. R. 654. Darrell visited Kimberly Mizack, P.A. on January 2, 2019 for an orthopedic evaluation of his right shoulder pain. R. 358. Ms. Mizack found that he had tenderness in the right anterior shoulder and greater tuberosity, without acute tenderness and full range of motion. R. 359. Ms. Mizack gave Darrell a cortisone injection, prescribed anti-inflammatory medications, and referred him to physical therapy. Id.

Darrell had a physical therapy evaluation on January 15, 2019 with Cody Bailey, P.T., and was scheduled to receive therapy for three weeks to address his right shoulder pain and weakness. R. 639–44. Darrell reported to Mr. Bailey that he had no shoulder pain and no limitations at home, thus he was discharged from physical therapy at his January 28, 2019 visit. R. 619–22.

Darrell saw Elizabeth Russo-Stringer, M.D. on January 7, 2019 with complaints of ongoing lower back pain that radiated to his legs. R. 645. Darrell's X-rays of the lumbar spine were "radiographically normal." R. 857. At his follow-up visit with Dr. Russo-Stringer on February 25, 2019, Darrell reported ongoing pain in his back and legs with no improvement after the epidural steroid injection. R. 613. Dr. Russo-Stringer determined that he had lumbar degenerative disc disease, spondylosis of the lumbar region, and chronic midline lower back pain with sciatica, and referred him to physical therapy to address the lower back pain. R. 617. Starting February 27, 2019, Darrell underwent eight weeks of physical therapy sessions. R. 608–13.

On May 16, 2019, Darrell had a follow-up visit Dr. Russo-Stringer and reported little to no relief with medication prescribed for pain in his lower back, right shoulder, and knees. R. 590. Dr. Russo-Stringer noted that Darrell's gait was mildly antalgic, and his examination was notable for tenderness and decreased range of motion of the right shoulder, tightness of the lumbar paraspinal musculature on the right, increased lumbar pain with range of motion, and back pain with straight leg raising. R. 593–94.

Darrell went to Carilion Clinic Sleep Medicine on June 20, 2019, and Danielle Ogle, CRNP, noted that he was compliant with and benefiting from the CPAP therapy. R. 389–94. Ms.

5

Ogle advised him to continue using the CPAP device for his obstructive sleep apnea and to follow-up in a year or sooner if any problems arise. R. 394.

At his August 20, 2019 visit with his primary care physician David Gregory, M.D., Darrell's hypertension and diabetes conditions were controlled with his treatment regimen and Dr. Gregory noted that Darrell did not need to be seen for another six months. R. 377–79. Darrell reported on February 28, 2020 that he had not been monitoring his blood pressure or blood glucose levels at home. R. 985. Dr. Gregory found that Darrell's hypertension and diabetes were uncontrolled, so he adjusted his medications and advised Darrell to return in four weeks. R. 988. At his June 25, 2020 follow-up visit, Dr. Gregory noted that Darrell's type-II diabetes mellitus, hypertension, and obesity were controlled and stable again with his prescribed medications. R. 970–74.

Darrell saw Robin Behr, N.P., for a pain management visit on January 15, 2020 and reported that he received no benefit from the recent steroid injection, and that he continued to experience lower back pain with radiation to both legs, along with shoulder and knee pain. R. 1100. Ms. Behr found that his examination was notable for tenderness and decreased range of motion of the right shoulder, tightness over the right lumbar paraspinal musculature, and increased pain with range of motion testing of the lumbar spine. R. 1104. Ms. Behr diagnosed Darrell with spondylosis without myelopathy or radiculopathy of the lumbar region. Ms. Behr provided Darrell with a letter indicating that he could return to work without restrictions and advised him to continue home physical therapy to maintain core and back strength. Id. At his March 11, 2020 visit with Ms. Behr, Darrell's examination findings were unchanged except he had tenderness over the left paraspinal region at L4-5. R. 1094, 1098. X-rays of his lumbar spine showed no evidence of acute lumbar spine osseous abnormality, no instability on flexion/

extension, and no significant interval change from previous study in January 2019. R. 1092. Darrell stated that he did not want an injection for his lumber degenerative disc disease, so Ms. Behr advised him to use Gabapentin and a muscle relaxant at bedtime. R. 1098.

Darrell's examination on June 11, 2020 by Ms. Behr was again notable for tenderness to palpation over the left paraspinal region at L4-5, tenderness and decreased range of motion of the right shoulder, tightness over the right lumbar paraspinal musculature, and increased pain with range of motion testing of the lumbar spine. R. 1090. Ms. Behr noted that he had degenerative disc disease of the lumbar spine and lumbar radiculopathy, and that Darrell requested an epidural steroid injection due to increased pain in the back and lower extremities. Id.

Regarding his mental impairments, Darrell saw Katherine Lee, LPC, on March 15, 2019, where he reported minimal improvement in his depressive symptoms and that he had decreased motivation. R. 604. Ms. Lee advised him to journal to address his thoughts and feelings, set daily goals, and practice assertive communication skills and boundaries with others. R. 605. At his May 30, 2019 visit, Ms. Lee, noted that Darrell had an "okay" mood, appropriate affect, intact thought process and content, normal speech, he appeared alert, oriented and cooperative, and had fair eye contact. R. 587–88. Ms. Lee discharged Darrell from behavioral health treatment after she found that his unspecified mood disorder improved, he was moderately motivated, and he met treatment goals. R. 588.

2. Medical Opinion Evidence

On August 1, 2019, Eugene Noland, M.D., a state agency medical consultant, found that Darrell's spine disorders, diabetes mellitus, essential hypertension, sleep-related breathing disorders, and gout were severe impairments. R. 113. Dr. Noland determined that there was

7

insufficient evidence to assess the impact of those impairments upon Darrell's functional capacity. R. 112.

On August 1, 2019, Andrew Bockner, Ph.D., a state agency psychological consultant, found that Darrell's anxiety and obsessive-compulsive disorders and his depressive, bipolar, and related disorders were severe impairments. R. 113. Dr. Bockner noted that there was insufficient evidence to assess the impact of those impairments upon Darrell's ability to understand, remember, or apply information, interact with others, concentrate, persist or maintain pace, or adapt or manage himself. Id. The ALJ found Drs. Noland and Bockner's opinions that there was a lack of sufficient medical evidence not persuasive as the record showed sustained conservative medical treatment, mental health treatment, physical findings, and radiological findings. R. 27.

On December 12, 2019, Jack Hutcheson, M.D., a state agency medical consultant, determined that Darrell's spine disorders, diabetes mellitus, essential hypertension, sleep-related breathing disorders, and gout were severe impairments. R. 101. Dr. Hutcheson found that Darrell could frequently lift and/or carry ten pounds, occasionally lift and/or carry twenty pounds, sit about six hours in an eight-hour workday, or stand and/or walk about six hours in an eight-hour workday. R. 103. Dr. Hutcheson also found that Darrell had no manipulative, visual, communicative, or environmental limitations, cannot climb ladders, ropes, or scaffolds, and can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. R. 103–04. The ALJ found Dr. Hutcheson's opinion partially persuasive, but adjusted the RFC to reflect Darrell's additional medical treatment and records. R. 27.

On December 12, 2019, Jo McClain, Psy.D., a state agency psychological consultant, determined that Darrell's anxiety and obsessive-compulsive disorders and his depressive, bipolar, and related disorders were severe impairments. R. 101. Dr. McClain found that Darrell's

mental impairments cause mild limitations in his ability to understand, remember, or apply information, interact with others, and concentrate, persist or maintain pace. Dr. McClain also found that Darrell had no limitation in adapting or manage himself. Id. The ALJ found Dr. McClain's opinion partially persuasive, but adjusted the RFC to reflect Darrell's additional medical treatment and records. R. 27.

On August 27, 2019, Dr. Gregory wrote a letter that he had treated Darrell since February 2019 and that Darrell has a history of type-II diabetes mellitus, chronic left hip arthritis, gastric reflux disease, hypertension, lumbar facet arthropathy, obstructive sleep apnea, restless leg syndrome, anxiety, depression, and nonalcoholic steatohepatitis. R. 367. Dr. Gregory found that Darrell's chronic left hip arthritis and lumbar facet arthropathy have rendered him "unable to stand, sit or squat for short periods of time." Id. Dr. Gregory also found that social limitations attributable to depressive and anxiety disorders limit Darrell's "ability to be functional to hold gainful employment." Id. The ALJ found that Dr. Gregory's opinion was not persuasive as it was not supported by the medical evidence on the record. R. 27–28.

**B. RFC Finding and Function-by-Function Analysis**

Darrell argues that the ALJ insufficiently explained his conclusion that Darrell can perform light work with certain manipulative and postural limitations. Pl.'s Br. 15–19, Dkt. 15. Specifically, Darrell argues that the ALJ failed to discuss his lumbar radiculopathy, chronic left hip arthritis, and patellofemoral arthritis, which prevents him from performing light exertional work. Id. at 16. Darrell also argues that the ALJ failed to make specific findings regarding whether his impairments would cause him to experience episodes of pain necessitating breaks and how often those breaks would occur. Id. at 18. Darrell further asserts that the ALJ minimized objective evidence in his assessment of Darrell's physical RFC. Id.

9

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Mascio v. Colvin, 780 F.3d. 632, 636 (4th Cir. 2015). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

A function-by-function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996).[5] The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ performed the required function-by-function analysis. The ALJ summarized the medical evidence and the hearing testimony. R. 17–29. The ALJ adequately explained the level of work that Darrell could complete given his severe physical impairments of degenerative disc disease of the lumbar spine, diabetes mellitus, hypertension, obstructive sleep apnea, gout, obesity, and dysfunction of the major joints in his right shoulder; the medical evidence that was considered in reaching his conclusions; and an explanation of the weight given to the medical opinions. Id. The ALJ concluded that the evidence in the record reflects that Darrell's symptoms were not disabling. R. 28.

The ALJ acknowledged Darrell's allegations that he has difficulty performing daily tasks; difficulty lifting, standing, walking, reaching, sitting, kneeling, climbing stairs, and concentrating; problems getting along with others; needs rest after walking one block; and is unable to follow instructions or handle stress. R. 23–24. The ALJ also described Darrell's testimony that he sweeps and mops, performs no outside chores, has chronic back pain, is unable

11

to sit or stand for more than fifteen to twenty minutes, can walk a half block on his own, and uses no supportive device. R. 24.

The ALJ found that Darrell only had mild limitations in his mental functioning and thus he had no severe mental impairments. R. 18–21. Regarding his physical impairments, the ALJ noted that Darrell had full shoulder range of motion and received conservative treatment for his shoulder, such as anti-inflammatory medications and physical therapy. R. 24. The ALJ also noted Darrell's compliance with ongoing CPAP therapy and medication use for his obstructive sleep apnea impairment. Id. Further, the ALJ discussed Darrell's conservative treatment for chronic pain in his lumbar spine and hip, including receiving epidural injections without complication. Id. The ALJ described Darrell's improvement with physical therapy and home exercise therapy. R. 25. The ALJ explained that Darrell regularly walked his dogs and was praised by Dr. Howell at his June 2020 visit for maintaining regular exercise and dietary changes. Id. Further, the ALJ found the state agency consultants' opinions partially persuasive to the extent that the record supports no severe mental impairments and a light exertional RFC, except that the ALJ adjusted the RFC for Darrell's recent medical treatment, radiological findings of mild degenerative disc disease, and conservative ongoing medical treatment. R. 27. The ALJ concluded that "the medical evidence was not supportive of disability based upon the clinical findings and the totality of the evidence." R. 28. Thus, the ALJ provided the required narrative discussion of Darrell's impairments and resulting limitations, and explained how the RFC accounted for his ability to perform sustained work activities.

Contrary to Darrell's argument, the ALJ adequately addressed Darrell's severe impairment of lumbar degenerative disc disease and non-severe physical impairments of lumbar radiculopathy and patellofemoral arthritis. The ALJ reviewed the medical evidence in the record

and explained that Darrell's lumbar degenerative disc disease was a severe impairment and further discussed Darrell's resulting lumbar radiculopathy and conservative treatment. R. 17, 24–25. Regarding his hip impairment, the ALJ noted Dr. Gregory's letter discussing Darrell's chronic left hip arthritis, his pain management records noting hip pain, and epidural injection treatment for lumbar and hip pain. R. 24, 27. With respect to Darrell's patellofemoral arthritis, Darrell points to Dr. Yoo's diagnosis in July 2017 (R. 737–39), which predates his application date by almost two years. The ALJ explained why Darrell's inflammatory arthritis was non-severe, including because Darrell "does not have persistent deformity or inflammation in one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively; or inflammation or deformity in one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively." R. 21–22. Further, the ALJ stated that "all impairments other than those enumerated above…are non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimal vocationally relevant limitations, have not lasted or are not expected to last at 'severe' level for a continuous period of 12 months, [or] are not expected to result in death." R. 18.

Under 20 C.F.R. § 404.1523, the ALJ must consider the combined effect of all of a claimant's impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. "Thus, the issue of whether or not a particular impairment is found severe is only critical if the ALJ finds no severe impairment and ends the analysis at step two; if any impairment is severe, the ALJ must consider all impairments when assessing residual functional capacity." Miller v. Astrue, No. 8:10-1142-HMH-JDA, 2011 WL 1576203, at *15 (D.S.C. Apr. 7, 2011). Consequently, any error by the ALJ at step two is harmless if the ALJ considers the effects of all of Darrell's impairments in the

subsequent steps. See Brooks v. Astrue, No. 5:10CV00104, 2012 WL 1022309, at *12 (W.D. Va. Mar. 26, 2012) (citing Miller, 2011 WL 1576203, at *15); see also Gaskins v. Comm'r, No. WDQ–13–1470, 2014 WL 979205, at *5 (D. Md. March 12, 2014); Hammond v. Astrue, No. TMD 11–2922, 2013 WL 822749, at *2 (D. Md. March 5, 2013) (collecting cases).

As explained above, in step four of the decision, the ALJ thoroughly reviewed and assessed Darrell's hearing testimony, subjective allegations, treatment records, and the medical opinion evidence. R. 19–24. The ALJ's step two findings related to his impairments are supported by substantial evidence. The ALJ did not minimize or ignore significant and substantial evidence. The ALJ explained that "[a]lthough supplemental security income is not payable prior to the month following the month in which the application was filed (20 C.F.R. 416.335), the undersigned has considered the complete medical history consistent with 20 C.F.R. 416.912." R. 15. The ALJ properly addressed Darrell's pain in his lower back, knees, and right shoulder and the medical records related to these complaints and concluded that such complaints did not preclude Darrell from work. R. 23–28. Accordingly, the ALJ thoroughly reviewed the record and accommodated Darrell's physical impairments by limiting him to light work with certain exertional and postural limitations. R. 23.

Darrell further asserts that the ALJ erred by not assessing his ability to sustain work activities over the course of an eight-hour workday and make specific findings regarding whether Darrell's impairments would necessitate breaks. I disagree. The ALJ noted that the medical evidence of record shows that Darrell generally did not complain to practitioners of serious difficulty maintaining concentration, persistence, and pace. R. 20. He further explained that Darrell's mental status examination results show that he had no serious problem completing basic psychological memory testing and other calculations. Id. Further, he explained that

providers did not observe that Darrell was overly distractible or slow. Id. The ALJ found that Darrell's daily tasks and reported activities of watching television and reading for pleasure required some concentration, persistence, and pace. Additionally, the ALJ noted that despite his complaints of difficulty engaging with others and completing tasks, the record indicates that Darrell routinely performs basic household chores, helps care for his daughter and pets, and maintains responsibilities around the home. Id. The ALJ reasoned that mental health examinations and treatment records showed diagnostic findings of anxiety and depression, yet also that Darrell had ongoing conservative treatment and no acute mental status abnormalities or deficits in cognition, understanding, mental acuity, or concentration. Id. Regarding Darrell's physical impairments, the ALJ explained that "the objective record indicates that the claimant is able to sustain a range of work at the light residual functional capacity." R. 26. Additionally, the ALJ's RFC assessment is generally consistent with the state agency consultants' opinions and the two prior ALJ decisions, which also found that Darrell is capable of performing a range of light work on a sustained basis. R. 59–68, 76–86, 95–106.[6] Thus, substantial evidence supports the ALJ's conclusion that despite his impairments, Darrell could perform work on a sustained basis during an eight-hour workday. Id.

---

[6] Darrell's argument that the ALJ erred by (1) stating that he gave "some weight" to the 2015 decision without addressing the passage of time and (2) gave "weight" to the 2018 decision without specifying the amount of weight is meritless. R. 26. The ALJ adequately explained that he gave the December 2015 decision some weight, as the light exertional RFC with additional limitations is supported by the current evidence of record, including physical examination and radiological findings. Id. Regarding the October 2018 decision, the ALJ explained that he gave the decision weight, as the record indicated no significant findings or evidentiary support that would substantially alter the RFC in his current decision. R. 26–27. The ALJ further stated that "[t]hese factors weigh in favor of giving the prior decision weight and is supported by recent radiological and physical examination findings, including April 2019 radiological findings indicating mild degenerative disc disease in the lumbar spine. Records also note conservative medical treatment of musculoskeletal symptoms via steroid epidural injection therapy." Id. Thus, for the reasons stated in this Report and Recommendation, substantial evidence supports the ALJ's decision.

Accordingly, the ALJ adequately explained how he arrived at Darrell's RFC findings and provided an accurate and logical bridge between the evidence and the findings as required in SSR 96-8p.

### C. Subjective Allegations

Darrell also asserts that the ALJ's decision regarding his allegations is not supported by substantial evidence. Pl.'s Br. at 19–24, Dkt. 15. Specifically, he argues that the ALJ failed to point to specific medical evidence supporting his conclusion that Darrell's allegations are not supported by the medical evidence, failed to quantify his daily activities, and failed to explain how his daily activities supported the ALJ's conclusion that Darrell's allegations were not fully supported. Id. at 23. Darrell did not identify specific instances where the ALJ ignored evidence or improperly applied the legal standards. Rather, Darrell asks this court to re-evaluate his subjective allegations and come to a different conclusion from that of the ALJ. That is not the province of this court.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled. Thus, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects

16

of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Contrary to Darrell's argument, the ALJ's opinion includes a detailed discussion of Darrell's medical history, including his subjective allegations. The ALJ adequately supported his findings that Darrell's allegations were not entirely consistent with the medical evidence and other evidence in the record. R. 23–28. The ALJ explained that Darrell's testimony was not persuasive as it was not supported by a "preponderance of the opinions and observations by medical doctors." R. 25. The ALJ acknowledged Darrell's subjective allegations that he has difficulty performing daily tasks, difficulty lifting, standing, walking, reaching, sitting, kneeling, climbing stairs, concentrating, problems getting along with others, needs to rest after walking one block, and is unable to follow instructions or handle stress. R. 23–24. The ALJ also described and considered in the RFC analysis Darrell's hearing testimony that he sweeps and mops but performs no outside chores due to his symptoms, has chronic back pain, is unable to sit or stand for more than fifteen to twenty minutes, can walk a half block on his own, and uses no supportive device. R. 24. The ALJ considered Darrell's hearing testimony that he unsuccessfully attempted to work at a job due to his chronic back pain and his claims that he was unable to lift

17

over five pounds or sit or stand for more than fifteen to twenty minutes. Id. Additionally, the ALJ noted Darrell's testimony that he received injections for back pain, could walk half a block, did not use a walking device, had issues with crouching and kneeling, and could lift his arms in all directions. Id.

Further, the ALJ addressed Darrell's objective medical evidence and the medical opinions on the record, which discounted the intensity and disability effects of his complaints. R. 24–26. The ALJ noted that Darrell had successful conservative treatment for his physical impairments and that his physical impairments improved with injections and physical therapy. R. 24–25. The ALJ also noted that Darrell had normal physical examinations at medical visits such as a normal gait, leg strength, intact sensation, and intact strength and function of the lower extremities. Thus, the ALJ concluded that although Darrell reported pain and a range of motion deficits, his symptoms improved with injections and physical therapy. R. 26.

Unlike the ALJ in Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017), the ALJ did not rely on minimal daily activities for the finding of non-disability, but used Darrell's daily activities as a factor in his assessment of Darrell's subjective allegations. See Ladda v. Berryhill, 749 F. App'x 166, 173 n.4 (4th Cir. 2018) (("the ALJ cited [the claimant's] daily activities for purposes of the credibility determination and *not* as examples of the functions [the claimant] could perform for an entire day." (emphasis added)). The ALJ reviewed Darrell's medical history and his subjective allegations and explained his conclusion that Darrell's statements regarding the intensity, persistence, and limiting effects of his alleged symptoms were not entirely consistent with the medical and other evidence in the record. R. 25. The ALJ properly addressed Darrell's reported daily activities of laundry, household tasks, grocery shopping, occasional cooking, regularly walking his dogs, regular exercise, and care of his

18

teenage daughter and family pets with some assistance of others as a factor in his assessment of his subjective allegations. R. 26. Thus, the ALJ cited Darrell's daily activities as only one factor supporting his determination that his subjective complaints were not entirely consistent with the evidence of record.

Though Darrell disagrees with the ALJ's analysis and conclusions, he does not identify any material conflicting evidence that the ALJ failed to consider or any material misstatement of the evidence of record. Rather, Darrell simply asks the Court to reweigh the evidence and reach a different conclusion than the ALJ. It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Darrell's subjective complaints with substantial evidence, and that Darrell can perform work at the level stated in the ALJ's opinion.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Darrell's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillion, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

    Entered:  September 2, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge